UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUL ALCALAN,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 14-cv-05520-NC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 22, 23 |

In this social security disability case, claimant Saul Alcalan seeks review of the Commissioner's determination that he is not disabled. Alcalan claims he is disabled because he can no longer work after injuring his back in a workplace accident, later exacerbated by a car accident. Alcalan alleges that his back injury prevents him from standing, sitting, or walking for long periods of time. Instead, he is limited to lying on his side for most of the day. Alcalan argues that the ALJ's conclusion is erroneous because the ALJ improperly rejected the opinion of Alcalan's treating physician, Dr. Yung, and the ALJ improperly discredited Alcalan's testimony as to the severity of his symptoms. Having reviewed the record as a whole, the Court concludes that the ALJ did not commit legal error, and that her determination was supported by substantial evidence in the record. As a result, the Court DENIES Alcalan's motion for summary judgment and GRANTS the Commissioner's motion for summary judgment.

/

Case No. 14-cv-05520-NC

## I. BACKGROUND

On January 28, 2011, Alcalan protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning March 5, 2010. A.R. 22.

### A. Administrative Review

Alcalan's claim was initially denied on June 16, 2011, and upon reconsideration on January 27, 2012. A.R. 22. On March 28, 2012, Alcalan filed a written request for a hearing. *Id.* A hearing was held before an Administrative Law Judge ("ALJ") on December 10, 2012. *Id.* Alcalan amended his alleged date of onset of disability to July 26, 2010. *Id.*

#### 1. Evidence in the Administrative Record

The evidence in the record consists primarily of the opinions of four doctors, Dr. Tran, Dr. Yung, Dr. Pon, and Dr. Nawar, who treated or examined Alcalan from 2010 to 2012. In June 2007, Alcalan injured his back at his workplace, but continued to work until March 2010. A.R. 220. On July 14, 2010, Dr. Tran examined Alcalan and noted that Alcalan had persistent back pain in the low back area. A.R. 220.

In January 2012, Alcalan began seeing Dr. Yung, who treated Alcalan on a monthly basis for back pain. A.R. 221. Dr. Yung filled out several work status and modification reports, which all indicated that he found Alcalan able to work, but with restrictions. A.R. 408-412. In the January, April, and May 2012 reports, Dr. Yung checked the box for "full-time work schedule with the following restrictions" and provided the restrictions of lifting only 20 pounds with no bending, pushing, or pulling. A.R. 408-412. On November 18, 2012, Dr. Yung filled out a mental residual functional capacity questionnaire in support of Alcalan's disability application. A.R. 426-30. In that report, Dr. Yung noted that he believed Alcalan suffered from depression, had decreased concentration, and was unable to perform at a consistent pace. A.R. 429. Additionally, Dr. Yung stated that Alcalan "can only sit, stand, and walk for half an hour before having to rest. He has to lay down 4 to 6 times a day for a half an hour at a time." A.R. 430. In that form, Dr. Yung stated that

Case No.14-cv-05520-NC            2

Alcalan's work limitations existed starting on January 11, 2012. A.R. 430.

Dr. Pon examined Alcalan on January 18, 2012, at the request of the Commissioner. A.R. 384-386. After examining Alcalan's history and conducting a physical examination, Dr. Pon opined that Alcalan "should be able to stand and/or walk for a total of 4 to 6 hours during an 8 hour workday. He should be able to sit for a total of 6 hours during an 8 hour work day." A.R. 386.

Dr. Nawar, a state agency medical consultant, reviewed Alcalan's records and concluded that Alcaln would be limited to light work, but otherwise able to work full time. A.R. 394.

### 2. The Hearing

At the hearing, Alcalan was represented by an attorney, Robert Taren. A.R. 88. A vocational expert also testified. A.R. 88.

Alcalan testified that his past work included being a supervisor then superintendent at a prefabrication unit factory. A.R. 91-92. In those positions, he lifted up to 75 pounds of sheetrock. A.R. 93. Alcalan did not finish high school, but completed 11th grade. A.R. 95. He completed a three-month training course at a college for engineer mechanics. A.R. 95. He also has a certificate in welding. A.R. 95-96. Alcalan stopped working in 2007 after he injured his back getting off a forklift at work. A.R. 99. He then went on workers' compensation, but continued to work until the business closed in mid-2010. A.R. 100. On July 26, 2010, he was rear ended in a car accident, and Alcalan testified that this increased the pain in his back. A.R. 101. Since then, Alcalan has been on state disability insurance. A.R. 101. Alcalan testified that his pain is increasing. A.R. 102.

Alcalan never had surgery on his back. A.R. 109. After his 2007 accident, Alcalan was treated by Dr. Tran, a pain specialist. A.R. 110. He stopped seeing Dr. Tran around 2008. A.R. 111. Also, Alcalan saw a chiropractor, George, until October or December 2010, for neck and back pain. A.R. 112. From 2010 to 2012, Alcalan did not see a doctor, expect for one visit with his family doctor. A.R. 112. In 2012, Alcalan began seeing Dr. Yung, who gave Alcalan epidural injections and provided him with a number of pain

relievers. A.R. 104.

Alcalan lives with his wife and two adult children. A.R. 97. Alcalan testified that his son assists with the household chores that Alcalan once did himself. A.R. 97. Alcalan drives into town, but otherwise, spends his days lying down. A.R. 103. Alcalan testified that he can comfortably drive for 20 minutes, and can "push it" to 45 minutes of driving. A.R. 104. Alcalan testified that he has trouble concentrating and remembering things. A.R. 101. Additionally, Alcalan testified that he can sit for 30 minutes and stand for 45 minutes to an hour. A.R. 103.

The vocational expert testified that an individual of Alcalan's age and experience, limited to a full range of light work, would be able to perform the jobs of salesperson of general hardware, a clerk/cashier, a parking lot attendant, and an usher. A.R. 117-18. The ALJ asked the vocational expert to assume that the individual was limited to standing and walking for four hours maximum in an eight-hour workday. A.R. 118. The vocational expert testified that this would eliminate the usher job entirely, eliminate 50% of the clerk/cashier jobs, and eliminate 25% of the parking lot attendant jobs. A.R. 119. This would leave approximately 39,000 jobs in the region, from Santa Clara County to the greater San Francisco Bay Area.

### 3. The ALJ's Finding

The ALJ issued her opinion, finding that Alcalan was not disabled on April 26, 2013. A.R. 24-30. At step one, the ALJ found that Alcalan met the insured status requirements and had not engaged in substantial gainful activity since July 26, 2010. A.R. 24. At step two, the ALJ found that Alcalan suffered from a severe impairment of lumbar degenerative disc disease. A.R. 24. However, at step three, the ALJ found that the medical evidence did not establish that Alcalan's severe impairment meets the criteria for disabled. A.R. 24-25.

At step four, the ALJ found that Alcalan had a residual functional capacity to perform light work, with the exception that Alcalan can no more than occasionally stoop, and no more than occasionally push and pull with his lower extremities. A.R. 25. The

Case No.14-cv-05520-NC                              4

1    ALJ followed the two-step process that inquires first into the underlying medically
2    determinable physical or mental impairment, and second, to the intensity, persistence, and
3    limiting effects of the claimant's symptoms.  The ALJ found that the medical evidence
4    supports only a limitation to light work with only occasional stooping or pushing and
5    pulling.  A.R. 26.  She notes that Dr. Tran treated Alcalan in 2010 and assessed that
6    Alcalan was capable of lifting up to 25 pounds.  A.R. 26.  Additionally, the ALJ
7    considered a radiographic scan of Alcalan's spine from July 26, 2010, and emergency
8    department records, which she concluded demonstrate a normal range of motion.  A.R. 26.
9    Dr. Pon concluded in 2012 that Alcalan had some limitation in movement.  A.R. 26.  The
10   ALJ noted, "claimant may experience some pain and discomfort due to his medically
11   determinable degenerative disc disease.  Yet, his limitations do not reach a level of severity
12   which would preclude him from all work activity as he has alleged."  A.R. 26.

13   At the second step of the severity determination, the ALJ found that Alcalan's
14   statements about the severity of his symptoms were not credible.  A.R. 26.  The ALJ found
15   that "office visit records from We Care Health Center did not indicate any complaints of
16   back pain during 2010 or 2011 until after the filing of the claimant's application for
17   disability benefits."  A.R. 26.  In coming to this determination, the ALJ gave great weight
18   to the state agency medical consultant, finding that Alcalan could perform light exertional
19   work with postural limitations.  A.R. 27.  Additionally, she gave some weight to Dr. Pon's
20   opinion that Alcalan could stand or walk for four to six hours, sit for six hours, and lift and
21   carry 10 pounds frequently, 20 pounds occasionally.  A.R. 27.  The ALJ considered Dr.
22   Yung's various evaluations, and gave great weight to Yung's opinion that Alcalan cannot
23   lift more than 20 pounds, or bend, push, or pull.  A.R. 27.  The ALJ gave Dr. Yung's
24   opinion little weight that Alcalan was unable to perform at a consistent pace and was
25   limited in his ability to remember, understand, and carry out short and simple instructions.
26   A.R. 27.  The ALJ stated, "Dr. Yung has not treated the claimant for any mental health
27   conditions.  Moreover, his opinion is completely unsubstantiated by any objective
28   evidence contained in the record and based solely on the claimant's subjective complaints

Case No.14-cv-05520-NC            5

regarding how his pain affects his mental functioning." A.R. 27. She also gave little weight to Dr. Yung's opinion that Alcalan can sit, stand, and walk for less than two hours, and that Alcalan must get up to walk every 20 minutes. A.R. 27. The ALJ noted, "This opinion is inconsistent with the claimant's treatment notes, physical examinations, and diagnostic testing, including those of Dr. Yung." A.R. 28.

At step five, the ALJ concluded that Alcalan could not do his past relevant work as an installer and building supervisor, as he had performed these jobs. A.R. 28. However, Alcalan could perform unskilled representative occupations such as a clerk cashier, parking lot attendant, and usher, and combined were available in more than 75,000 jobs in Santa Clara to San Francisco Bay area. A.R. 29. In the alternative, the ALJ found that even if Alcalan was limited to standing or walking no more than four hours, he would still be able to perform work as a parking lot attendant and a clerk cashier. A.R. 29-30. These jobs are available in a significant number in the regional economy, so Alcalan was not found to be disabled.

### 4. The Appeals Council Review and Jurisdiction

After the ALJ made her determination, Alcalan submitted a note from Dr. Yung, which stated that Dr. Yung believed the ALJ incorrectly interpreted his medical notes and opinions. A.R. 493. Dr. Yung concluded his note by opining "Mr. Alcalan should be awarded social security disability." A.R. 494. Alacan appealed the ALJ's decision, and on October 29, 2014, the Appeals Council denied review. A.R. 1-6. Therefore, the ALJ's decision is the final decision of the Commissioner of Social Security. Alcalan appealed to the district court on December 18, 2014. Alcalan and the Commissioner move for summary judgment. Dkt. Nos. 22, 23. Both parties consented to magistrate judge jurisdiction. Dkt. Nos. 8, 10.

## II. LEGAL STANDARD

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

Case No.14-cv-05520-NC            6

1    The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance."). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir.1995).

## III. DISCUSSION

Alcalan argues that the ALJ erred in her RFC determination because (A) the ALJ improperly rejected Dr. Yung's testimony, and (B) the ALJ improperly discredited Alcalan's testimony.

### A. ALJ's Rejection of Dr. Yung's Testimony

Alcalan argues that the ALJ improperly discredited portions of Dr. Yung's opinions, specifically, his finding that Alcalan was depressed and unable to maintain focus and a consistent pace. According to Alcalan, if the ALJ credited that testimony, she would have found Alcalan disabled.

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Generally, "the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999). The Commissioner must provide "clear and convincing" reasons for rejecting the un-contradicted opinion of a treating physician. *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir. 1990). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating [her] interpretation thereof, and making findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

A review of the record demonstrates that the ALJ credited Dr. Yung's opinions from January 2012 to August 2012, which opined that Alcalan was limited to lifting 20 pounds and was unable to stoop, push, or pull. The ALJ noted that she rejected Dr. Yung's August 2012 and later opinions because Dr. Yung was not treating Alcalan for mental health issues, and his conclusions were inconsistent with his prior opinions and the record as a whole.

The Court finds that these are specific and legitimate reasons, supported by substantial evidence in the record. From January to August 2012, Dr. Yung only evaluated Alcalan's back injuries. Dr. Yung prescribed Alcalan a variety of pain medication, but did not recommend surgery. In his evaluations, Dr. Yung did not find that Alcalan was unable to work. In fact, in January, April, and May of 2012, Dr. Yung noted that Alcalan would be able to work full time. Beyond Dr. Yung's observation that Alcalan appears down and depressed, Dr. Yung does not provide any objective basis for his August 2012 opinion that Alcalan could only sit and stand for half an hour at a time.

Dr. Pon examined Alcalan in January 2012, and opined that Alcalan "should be able to stand and/or walk for a total of 4 to 6 hours during an 8 hour workday." A.R. 386. Thus, Dr. Yung's opinion was contradicted by an examining physician. As a result, the ALJ must provide specific and legitimate reasons for disregarding Dr. Yung's opinion. Here, Dr. Yung's August 2012 evaluation is inconsistent with the record as a whole, and the ALJ provided detailed reasoning as to why she rejected Dr. Yung's opinion.

Alcalan points to Dr. Yung's August 11, 2013, letter which contests the ALJ's interpretation of his treatment notes. In the Ninth Circuit, "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). The Court has reviewed Dr. Yung's letter, but finds that it does not address the inconsistencies noted by the ALJ and discussed above. Dr. Yung never recommended that Alcalan have surgery, and his letter

1  does not explain what objective medical evidence existed for his change in opinion
2  between May 2012 and August 2012.
3    Therefore, the Court DENIES Alcalan's motion for summary judgment, and
4  GRANTS the Commissioner's motion as to this issue.

### B. ALJ's Credibility Determination

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effects of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ found that there was insufficient medical evidence to support Alcalan's statements as to the intensity of his pain. Alcalan testified that he was unable to do more other than lay down on his right side daily. The ALJ found that "office visit records from We Care Health Center did not indicate any complaints of back pain during 2010 or 2011 until after the filing of the claimant's application for disability benefits." A.R. 26. The ALJ noted that Alcalan did not need surgery for his back. Additionally, without considering Dr. Yung's August 2012 evaluation, all of the evidence in the record is consistent that Alcalan would require some accommodation in pushing, pulling, and stooping, but otherwise, would be able to stand, sit, or walk for up to four hours in an eight

Case No.14-cv-05520-NC            9

hour workday. Therefore, the ALJ did not find that there was objective medical evidence that supported that Alcalan had an underlying condition that would support the severity of Alcalan's claims. Additionally, the ALJ noted that Alcalan did not see a doctor from 2010 to 2012. Thus, the ALJ found Alcalan's testimony credible because she did not conclude at the first step that there was no objective medical evidence that would be expected to produce the symptoms alleged.

The Court finds that the ALJ provided specific, clear and convincing reasons for rejecting Alcalan's testimony about the severity of his symptoms. As noted above, the ALJ properly rejected Dr. Yung's testimony about Alcalan's mental state and his limitations to only half an hour of walking, sitting, or standing. The rest of the evidence in the record supports the ALJ's conclusion that Alcalan was able to walk or stand for up to four hours. The Court notes that Alcalan sought medical treatment immediately after his accident, but then did not see a treating physician from August 2010 to January 2012. No physician recommended surgery, and Alcalan never had surgery on his back. Based on Dr. Yung's initial treating notes, Alcalan was capable of working full time, with some restrictions. Thus, the ALJ's decision to discredit Alcalan's testimony about the severity of his pain is supported by substantial evidence, and the ALJ provided sufficiently clear and convincing reasons. The Court DENIES Alcalan's motion for summary judgment and GRANTS the Commissioner's motion for summary judgment as to this issue.

## IV. CONCLUSION

The Court finds that the ALJ's opinion did not constitute legal error, and her conclusion that Alcalan is not disabled was supported by substantial evidence in the record. Therefore, the Court DENIES Alcalan's motion for summary judgment and GRANTS the Commissioner's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: November 9, 2015

_____
NATHANAEL M. COUSINS
United States Magistrate Judge